UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO MIGUEL FREEMAN,

                Petitioner,              Case Number 2:11-CV-10995
                                              Honorable Denise Page Hood

v.

TONY TRIERWEILER,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS, AND DENYING PETITIONER'S MOTON TO APPOINT COUNSEL**

This matter is before the Court on Petitioner Antonio Freeman's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner is serving a life sentence for his Wayne Circuit Court jury trial conviction of first-degree murder, felon in possession of a firearm, and commission of a felony with a firearm. The petition raises three claims: (1) prosecutorial misconduct rendered Petitioner's trial fundamentally unfair; (2) there was insufficient evidence presented at trial to sustain Petitioner's convictions; and (3) Petitioner was denied the effective assistance of trial counsel due to his failure to object to the misconduct of the prosecutor. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal informa pauperis.

**I. Facts and Procedural History**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. §

2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

This case arises out of the shooting death of Derrick Carmichael at the Six Mile Coney Island in Highland Park on the evening of April 2, 2008. The restaurant cashier, Melinda Goins, testified that during her shift that evening, Carmichael and a regular patron known as "Red" arrived at the restaurant shortly before defendant, with whom Goins was involved in an "intimate" relationship. Upon defendant's arrival, an argument ensued between defendant and Carmichael. Red was not involved in this altercation. After several minutes, Goins heard a single gunshot from the lobby of the restaurant and heard Red declare, "Oh, shit," before running out the door. However, it was not until a boy entered the restaurant and started screaming that Goins noticed Carmichael lying facedown on the floor and called the police.

At trial, Goins testified that following the shooting, she spoke on the phone several times with defendant, who made a number of inculpatory statements. Specifically, defendant told Goins that he had shot Carmichael, that he would not kill a friend and Carmichael was not his friend, and that "my brother can't believe I did it." Notably, Goins explained that Carmichael and Goins had a history of confrontations, having been in arguments at the Coney Island on two occasions prior to the shooting and having engaged in a physical fight during which Carmichael gave defendant a black eye and defendant had to be restrained from choking Carmichael. Goins additionally indicated that on the day of the shooting, she noticed a sawed off shotgun in defendant's bedroom. Defendant later indicated to Goins that this was the shotgun he used to kill Carmichael. Consistent with this rendition of events, Carmichael's autopsy revealed that he died of a single gunshot wound to the back of the head, and police found a spent shotgun shell casing and three shotgun pellets at the scene of the shooting. Goins reported this inculpatory information to police, and defendant was subsequently arrested at Sinai Grace Hospital where was admitted under the alias, Trevion Smith.

Contrary to Goins's rendition of events, defendant denied knowing Carmichael, engaging in any arguments or fights with him, telling Goins or his brother that he had shot anyone, or showing a shotgun to Goins. Instead, defendant relayed that while leaving the Coney Island the night of the shooting, he noticed two men enter the restaurant, one of whom was carrying a large object, and heard a loud noise. Shortly thereafter, defendant was shot while walking in the middle of the street two blocks from his house by a man defendant claimed resembled one of the men he observed entering the Coney Island the night of the shooting. It was after this, defendant explained, that he was admitted to Sinai Grace under the alias Trevion Smith since he "feared for his family."

-2-

*People v. Freeman*, 2010 Mich. App. LEXIS 1384, *1-3 (Mich. Ct. App. July 15, 2010).

Following sentencing, Petitioner appealed his conviction to the Michigan Court of Appeals. His appellate brief raised the following claims:

I. In a case with no eyewitnesses and no physical evidence linking Mr. Freeman to the shooting, the prosecution's pervasive misconduct, which consisted of bolstering the testimony of and vouching for the credibility of the prosecution's key witness, denigrating the defendant and defense counsel, and misstating the evidence, deprived Mr. Freemon of his due process right to a fair trial, US Const AM XIV.

II. Mr. Freeman's first-degree murder conviction violated due process where the evidence was insufficient to support the verdict. US Const AM XIV.

III. Trial counsel's failure to object to repeated instances of prosecutorial misconduct resulted in a denial of Mr. Freeman's Sixth Amendment right to the effective assistance of counsel.

The Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. *Id.*

Petitioner filed an application for leave to appeal this decision in the Michigan Supreme Court, but the application was denied by standard order. *People v. Freeman*, 488 Mich. 995 (2010) (table).

Petitioner then commenced the instant action by filing his application for a writ of habeas corpus, raising the same three claims he presented to the state appellate courts.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary

-4-

conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

### A. Prosecutorial Misconduct and Ineffective Assistance of Counsel

Petitioner's first claim asserts that the prosecutor committed misconduct, rendering his trial fundamentally unfair.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*,    U.S.   , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Petitioner makes several allegations of misconduct.  He first asserts that the prosecutor improperly vouched for the credibility of Goins by asserting during opening statement and closing argument that Goins had no reason to lie and was an honest person.

Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also, United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).

Here, as the Michigan Court of Appeals correctly observed, the prosecutor's

comments did not place the prestige of the government behind the witness by making personal assurances of a witness's veracity, nor did the prosecutor imply that he knew of facts that had not been introduced. Rather, the prosecutor merely argued that the witness's testimony should be believed because based on the evidence presented, she had no reason to lie.  The prosecutor's comments were merely a fair characterization of the evidence presented to the jury based on his summation of that evidence. As such, they did not constitute impermissible vouching for the credibility of a witnesses.

The Michigan Court of Appeals did find that the prosecutor, in violation of state evidentiary law, used Goins' prior consistent testimony during the preliminary examination to bolster her credibility. *Freeman*, 2010 Mich. App. LEXIS 1384, *4, n. 1.  And in a decision interpreting Federal Rule of Evidence 801(d)(1)(B), which is comparable to Michigan Rule of Evidence 801(d)(1)(B), the Supreme Court stated that, "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." *Tome v. United States*, 513 U.S. 150, 157 (1995). But there is no Supreme Court decision, however, holding that the improper use of a witness's prior consistent statements violates the Constitution. The Court concludes that the prosecutor's use of Goins' prior consistent statements did not deprive Petitioner of a fundamentally fair trial.  As stated by the state appellate court, there was only one instance where the prosecutor did not use the preliminary examination transcript to refresh Goins' recollection under Michigan Rule of Evidence 612.  That one incident involved the prosecutor improperly reading a portion of the exam transcript into the trial record after Goins testified at trial about the same facts. Specifically, Goins testified that Petitioner told her that he shot the victim after the argument, and then the prosecutor read

her similar testimony from the examination.  The jury was therefore not exposed to any new information that was not otherwise properly presented.  Accordingly, the Court concludes that this improper use of the examination transcript did not render Petitioner's trial fundamentally unfair.

Petitioner also asserts that the prosecutor committed misconduct by denigrating him. Specifically, he assets that it was improper for the prosecutor to say that he "snuff[ed] out [Charmichael's] life like he's a piece of garbage," and describing Petitioner's defense as "eleventh-hour nonsense," "a red herring," and "a wild goose chase."  Prosecutors are not required to state their arguments in the blandest of terms.  The language used by the prosecutor here falls far short of the types of remarks that render a trial unfair.  *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"); *See United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct, noting that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth."); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician  pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws").

Petitioner's related third habeas claim contends that his trial counsel was ineffective for failing to object to the above described prosecutorial misconduct. But to show prejudice under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's questions and comments did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these questions and remarks. *Slagle v. Bagley*, 457 F. 3d 501, 528 (6th Cir. 2006).

Accordingly, Petitioner's first and third habeas claims are without merit.


**B. Sufficiency of the Evidence**

Petitioner's second habeas claim asserts that insufficient evidence was offered at trial to identify him as the shooter or that the perpetrator acted with premeditation necessary to be guilty of first-degree murder.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a

reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson,* 132 S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

First, Petitioner asserts there was insufficient evidence to establish his identity as the perpetrator.  Goins testified that she heard the shot minutes after she turned away from the argument, and that Petitioner confessed to her later that day that he had killed the victim.  Petitioner asserts that her testimony was not credible.  However, when determining whether  there exists sufficient evidence to support a conviction, the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not

affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Accordingly, Petitioner's assertion that Goins was not credible does not present a meritorious challenge to the legal sufficiency of the evidence to establish his identity as the perpetrator.

Next, Petitioner asserts there was insufficient evidence to establish premeditation. In Michigan, the elements of premeditated murder are (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 254 Mich. App. 142, 151 (2002) (quoting Mich. Comp. Laws § 750.316(1)(a)). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 31 Mich. App. 301, 329 (1971) (internal and end footnotes omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *Id.* at 330. "A pause between the initial homicidal intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation." *People v. Plummer*, 229 Mich. App. 293, 301 (1998) (citing *People v. Tilley*, 405 Mich. 38, 45 (1979)). "'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.'" *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 745 (6th Cir. 1999)).

The Michigan Court of Appeals reasonably found sufficient evidence of premeditation. Viewed most favorably to the prosecution, the evidence showed that

Petitioner and the victim had a history of confrontations.   Goins once saw Petitioner restrained from chocking the victim.  On the day of the shooting, Petitioner was armed with a shotgun and engaged in a heated argument with the victim.  The victim was shot at close range in the back of the head minutes later.  Given these circumstances, a rational juror could conclude beyond a reasonable doubt that Petitioner had an opportunity for a "second look" before shooting the victim.  The finding of the state court was not so insupportable as to fall below the threshold of bare rationality.

Petitioner's second claim is therefore without merit.


### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.  The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's

claims.  The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion to appoint counsel is **DENIED** as moot.

                                        S/Denise Page Hood
                                        Denise Page Hood
                                        United States District Judge

Dated:  February 28, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2013, by electronic and/or ordinary mail.

                                        S/LaShawn R. Saulsberry
                                        Case Manager